[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Stamford, Connecticut, on April 9, 1988. They have an eight-year-old daughter who resides with the mother at the family home at 103 Belltown Road in Stamford, Connecticut. The parties have lived separate and apart since approximately May of 2000 when the plaintiff wife ("wife") obtained a restraining order from the court barring the defendant husband ("husband") from the premises. The issues were tried over the course of three days. At the time of trial the counsel for the plaintiff raised some preliminary issues including the fact that her client had filed for Chapter 13 Protection under the United States Bankruptcy Code and is currently in the third year of a five-year plan. Counsel asked the court to reserve jurisdiction with regard to the division of marital assets pending final discharge. Since the principal asset is the real estate which is currently in the wife's name, and since the court's orders do not unduly interfere with her ability to obtain a "fresh start," the court declines to do so. The wife also indicated that she wished to pursue a motion for contempt with regard to the pendente lite orders of the court for support. Some evidence was introduced to indicate that the husband was in fact in arrears. In addition, the plaintiff seeks a finding of contempt based upon the defendant's entry into the family dwelling on February 26, 2001 at which time it is alleged that he removed certain properties. Again testimony was taken regarding this particular issue.
The wife is 37 years old and in apparent good health. She has a Bachelor of Science in Computer Science from Southern Connecticut. She has been employed as a Supervisor in the Human Resources department at United States Tobacco ("UST") for the past 15 years. Her current base salary is approximately $62,000 per year. In addition to that, she has, according her testimony, received regular and recurring bonuses for most of that time. Bonuses are paid in February of each year and she indicated that the gross bonus for the year 2000 payable February of 2001 was $17,000. She indicated, however, because of taxes and other deductions that she netted considerably less. In addition, she has health care benefits, stock options, a 401(K) savings plan (with an employer match), as well as a pension plan of an unspecified value. She did indicate during testimony that she is fully vested in the plan, but that it is not CT Page 10600 payable until either early or normal retirement. She further indicated that she had offered and continues to offer her husband a share in this benefit. She drives a Nissan 2000 Pathfinder which is leased in her father's name and the leasehold payments are paid by him.
The husband is 42 years old and has received a two-year Associate Degree from Sacramento College. When employed, his principal occupation has been that of a car salesman. He is currently working for a dealership in Del Ray Beach, Florida. He has indicated on his financial affidavit that he makes somewhat less than $300 per week gross, however, he offered testimony to the court that he is optimistic about his future earnings. He said that he had started this job in December on a pure commission basis (no base salary) and that he has earned approximately $2000 since the first of the year. He is hopeful, however, that he can build up his base income. According to the testimony of both parties he has historically been an excellent salesman. At one point during the marriage he owned a used car dealership in Norwalk, Connecticut which also sold mufflers as a side line. The husband had some personal property which he removed from the family home, and has claim to a limited number of pieces still remaining there. Also, he owns a Ford Escort, and one point he owned a Camaro which he restored and has since been sold. In addition, he had a personal injury action which has since been settled that netted him approximately $5700.
The principal marital asset of the parties is the real estate located at 103 Belltown Road in Stamford, Connecticut. The property was purchased in October of 1992 for a cost of $176,000. At that time the parties took out a $150,000 mortgage. There is a conflict with regard to the source of the balance of the purchase price and closing. It is clear that each of the parties either directly or through family members made some contributions toward the purchase. The wife indicated that she believes the property is worth $213,000 and bases this on a calculation based upon the current assessed value as shown in the tax bill. The husband testified that he believes that the house is worth $275,000, and he bases his opinion based upon his knowledge of properties in the neighborhood. The property is solely in the wife's name as is the mortgage, however, the testimony of the parties was that it was specifically placed in the wife's name because of concerns that creditors of the husband, who at that time was self-employed, might have access to the property. According to the wife, sometime late in the marriage the parties got into financial difficulties and there was an approximately $12,000 arrearage on the mortgage. As a result of a foreclosure, the wife declared bankruptcy and is currently making payments to the bank in accordance with a five-year plan in addition to maintaining the mortgage in its current status. Again, there was conflicting testimony by the parties as to whether or not each at one time or another contributed to the maintenance of the CT Page 10601 house. The wife contended that the husband made no contributions and that she has traditionally carried in her words "90%" of the costs of the house. The husband, on the other hand, contends that from the beginning of their marriage they both pooled their resources and applied it to the household. The wife testified that she traditionally paid the monthly bills. The wife has asked for sole interest in the house. The husband would like the house sold and the proceeds divided. He did indicate to the court that he would be willing to consider a somewhat uneven division of the net proceeds.
There was considerable testimony over the course of three days regarding the causes of the breakdown of the marriage. As indicated above, the wife testified that she in essence bore the entire financial burden for the house, while the husband lavished whatever income he had on restoration of cars, including a 1969 Chevy Camaro. The wife testified he put upwards of $30,000 into the car, however, according to the husband, he indicated that it was approximately $7000 or $8000. The wife contended that the husband never invested any monies in the house other than through his family and for the initial down payment, however, the husband testified that in fact at the time he was removed from the family home, he had purchased supplies at Home Depot up to approximately $8000 to remodel/renovate the bathroom and a bedroom. The wife conceded that there was some minor painting done as well as the installation of some cheap press-on tiles. The wife did testify that while the husband had a great love of automobiles, she did share his interest with regard to car shows which both of them attended on a regular basis, principally to show off his restored car. The principal complaint of the wife involved allegations of the husband's repeated drug use. The husband contends that he has been clean and sober for a period of seven years. There was extensive testimony with regard from both parties regarding his residence at certain treatment/halfway houses including Father Martin's in Maryland as well as the Lighthouse in Del Ray Beach, Florida. The husband does not deny his residence at these facilities, and with regard to his last visit earlier this year, he contends that he was using it as a last resort because he had no place to live and that he needed in essence a safety net to get into productive work. In addition, the husband testified that when he met his wife both frequented a nightclub at which cocaine was used and that in fact both parties including the wife used cocaine. The wife has adamantly denied use of any illegal substance. The husband has also indicated the wife drinks vodka to excess. The court feels that while both parties were less than candid with the court in some instances during the trial, the court does find the wife more credible than the husband. On at least two occasions, the court had to admonish the husband regarding his testimony which the court believes was intended to cast himself in a good light with the court with regard to the issues of custody and visitation. The husband indicates that he does not want the CT Page 10602 marriage to end, however, it is clear to the court that after listening to the parties over the course of the trial, that the marriage has broken down irretrievably.
Perhaps the most difficult and troublesome issue before the court is the custody and visitation issues regarding the eight year old daughter. For a variety of reasons, some of them self-created, the father has had very limited contact with the child since he was removed from the home in May of 2000. In fact, until the second day of trial, the husband had only seen his daughter once during that period of time, and that was for a short visit in December of 2000. Phone contact was ordered restored by this court in November, and there was considerable and conflicting testimony with regard to whether or not the access was being withheld or the husband himself was not making himself available. The husband is understandably and visibly upset with regard to the situation with his daughter, however, his cause is hampered in some respects by a lack of candor, and the abysmal record of communication by and between the parents which is virtually non-existent. When it occurs, it is generally unproductive. Upon questioning by court, the husband indicated that he would be willing to cooperate with Family Relations in working out a more specific parenting plan. However, the wife testified, un-controverted by husband, that he failed to participate in a previously scheduled mediation with the Family Relations office. The court feels that the husband has made significant strides toward getting his life in order and himself on a better financial footing. The wife, for her part, is extremely angry with the husband and so protective of the child vis-á-vis her husband that the court feels there is a very real danger of alienation. In fact, the court is convinced that, but for judicial intervention, she would be content to so drastically limit the husband's visitation with the child as to make it meaningless. Neither parent has acted maturely or responsibly when the situation is viewed in the light of the best interest of their daughter. Nevertheless, under the totality of the circumstances, this court feels that it is not in the best interest of the child to immediately restore visitation in accordance with a traditional model under the current circumstances. The court feels that it would be in the best interest to adopt, initially, a more structured and gradually evolving model.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at the hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
CT Page 10603 1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably; and that ample evidence exists that while both parties have contributed to said breakdown, the husband must bear the greater responsibility.
 4. That the wife is in good health and has a demonstrated earning capacity of $75,000 per annum (including her regularly recurring bonus); that she is capable of supporting herself, and that it is equitable and appropriate that no periodic alimony be awarded to her.
 5. That the husband is currently in good health; that he is recovering from a substance abuse problem and that he has made a good faith effort to deal with this problem; that he has a minimum demonstrated earning capacity of approximately $15,000 per year; and that he is capable of supporting himself, and that it is equitable and appropriate that no periodic alimony be awarded to him.
 6. That the value of the real estate at 103 Belltown Road, Stamford, Connecticut is approximately $200,000; the current balance of the mortgage thereon is $150,000; and that the equity in the property is $50,000.
 7. That the last payment of court-ordered child support in the amount of $25 per week was made by the husband on or about December 25, 2000; and that there is an arrearage in child support in the amount of $800.
 8. That throughout the marriage, until their separation, both parties made contributions to the family, including the real estate.
 9. That on or about February 26, 2001, the husband forcibly entered the family home at 103 Belltown CT Page 10604 Road, Stamford, and removed certain items of personal and marital property; and that it is equitable and appropriate that the remaining items, except as specifically set forth herein shall be the sole property of the wife which she can dispose of as she deems appropriate.
 10. That it is in the best interest of the minor child that she have the benefit of both parents' input in her upbringing; that she have regular and consistent contact and visitation with her father; that for a variety of reasons, not the least of which are the inability of the parties to communicate in a civil and constructive manner, the husband's previous inappropriate life choices, the long distance nature of the relationship, and the wife's palpable hostility toward the husband, the minor child is in serious danger of being alienated from her father; that this would be harmful to her development; that a traditional visitation model is not appropriate at this time; and that the parties are in need of some form of assistance in crafting an appropriate parenting plan, taking into account the age of the child, the family finances, the distance between the parties, and the existing emotional barriers.
 11. That a portion of the wife's pension plan and 401k plan with her employer UST, Inc. are marital assets; that it is equitable and appropriate that the husband share in the marital portion; that the wife has been employed at UST, Inc. for approximately fifteen years; and that the value of the marital portion of each asset as of the date of this order is approximately 85%.
 12. That due to the husband's failure to provide adequate support the mortgage fell approximately $12,000 in arrears, and the wife filed for protection under Chapter 13 of the U.S. Bankruptcy Code; that the wife is currently obligated to make payments in accordance with that court; and that it would be equitable and appropriate to take this obligation into account when dividing the marital home. CT Page 10605
 13. That the basic child support obligation of the husband under the Child Support Guidelines is $52 per week; that in addition thereto, the husband's contribution toward child care and un-reimbursed medical expenses is $13 per week; and that his contribution toward the accumulated arrearage is $10 per week. However, the court finds it equitable and appropriate to deviate from the Child Support Guidelines on the basis of significant travel expenses (46b-215a-3(b)(3)(A)) and other equitable factors (46b-215a-3(b)(6)(C)).
 ORDER
IT IS HEREBY ORDERED THAT:
 1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. No alimony is awarded to either party.
 3. The parties shall have joint legal custody of the minor child, JENNIFER ANNE TOMPKINS, born February 1, 1993. The primary physical custody of the minor child shall be with the mother, subject to the reasonable, liberal and flexible visitation rights of the father. Initial visitation with the father shall be at least one full weekend per month in Connecticut from Friday at 5:00 PM until Sunday at 7:00 PM, two consecutive weeks during the summer (in Connecticut or Florida), and alternating with the mother, the week following Christmas Day (father in 2001), and the spring school recess (mother in 2002), and at such other times as the parties may agree. In addition, the father shall have reasonable telephone access to the minor child, which shall be at a minimum of two (2) times per week. The husband is not to use any alcohol or controlled substances during visitation with the minor child. The parties shall consult with one another concerning all major issues involving the minor child, including but not limited to, health, education, and religious affihation and training. In the event that parties are unable to agree upon a specific parenting plan CT Page 10606 consistent with this order, within thirty (30) days hereof, or any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office for mediation prior to a determination by the Court.
 4. Commencing August 3, 2001, and weekly thereafter, the defendant shall pay to the plaintiff the sum of $35.00 as and for basic child support for the minor child, until such time as she reaches the age of eighteen years or is otherwise emancipated. In the event that the child is still in high school upon reaching her eighteenth birthday, then in that event, any child support order shall continue until the child reaches the age of nineteen years or the first day of the first month following her graduation from high school, whichever shall sooner occur pursuant to Section 46b-84 (b) C.G.S. In addition, the defendant shall pay the sum of $15.00 per week as and for the contribution toward the day care and un-reimbursed medical expenses of the minor child, for a total weekly support payment of $50.00. The foregoing notwithstanding, it is the intention of this order that the husband pay fifteen (15%) percent of the present and future day care costs incurred by the plaintiff for the minor child. The present order is based upon the current cost of day care for the minor child in the amount of $86.00 per week. The Court expects these charges to change over time, and that the defendant's obligation shall be adjusted accordingly consistent with this order.
 5. Commencing August 3, 2001, and weekly thereafter, the husband shall pay to the wife the sum of $10 until such time as the arrearage in the amount $800 is paid in full.
 6. The wife shall maintain and pay for health insurance for the minor child so long as it is an incident of her employment and available at reasonable cost. In the event that it is no longer available to the wife at reasonable cost, then both parties shall be liable for one-half the cost for equivalent coverage. Un-reimbursed medical, CT Page 10607 dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child shall be divided by the parties, 85% by the wife and 15% by the defendant. The provisions of Section 46b-84 (e) C.G.S. shall apply.
 7. The wife shall promptly notify her employer as to the change of marital status and shall cooperate with the husband in obtaining continuation health insurance coverage as provided by state and federal law. The defendant shall be responsible for the payment of any premiums due for such coverage.
 8. a. The wife shall maintain the existing group term life insurance in the amount of $100,000, and shall name the minor child beneficiaries thereof, so long as same is an incident of her employment and can be maintained at a reasonable premium, and for so long as the defendant husband has an obligation to support the minor child.
 b. If group term life insurance shall become available to the defendant through his current or any future employment, at reasonable cost, and provided he is insurable, the defendant shall obtain and maintain the maximum amount available, but not to exceed a face value of $100,000, for the benefit of the minor child, so long as he has any financial obligation to support the minor child pursuant to this Memorandum of Decision. The Court shall retain jurisdiction to decide any issues which may arise regarding life insurance.
 9. As to the jointly-owned real estate at 103 Belltown Road, Stamford, Connecticut, the wife shall have exclusive possession of the real estate, subject to the existing indebtedness, and she shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the defendant harmless from any further liability thereunder. The plaintiff shall pay to the defendant the sum of TWENTY THOUSAND CT Page 10608 AND NO/100 DOLLARS ($20,000.00) upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing mortgage or the obtaining of new or additional financing, or three (3) years from the date of this Memorandum of Decision, whichever shall sooner occur. The plaintiff shall execute a simple Promissory Note to the defendant containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of default, and which shall not bear interest if paid on or before the end of such three (3) year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. Both the Mortgage Deed and Note shall be executed simultaneously with the delivery of the Quit Claim Deed to the plaintiff
10. Personal property shall be divided as follows:
 a. The minor child's furniture shall remain in the plaintiff's residence.
 b. With the exception of the MAC toolbox and mechanic's tools and the desk from his father's business which shall be the property of the husband, the remaining home furnishings at 103 Belltown Road, Stamford (other than the child's furniture) shall be the sole property of the plaintiff without any further claim by the defendant.
 c. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 d. The wife shall be entitled to keep her UST, Inc. stock options free and clear of any claims by the husband.
 e. Each party shall be entitled to keep the balances in their respective savings, CT Page 10609 checking, and money market accounts, free and clear of any claims by the other.
 f. The defendant shall be entitled to keep his tools free and clear of any claim by the plaintiff
 g. The defendant shall be entitled to the net proceeds from his personal injury recovery in the amount of approximately $5,700 free and clear of any claims by the wife.
 11. The retirement accounts shall be divided as follows:
a. As to the UST, Inc. 401k Plan:
 Effective as of August 1, 2001, the then balance of the 401k Plan ("Plan")of the wife through her employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the wife, 42.5% to the husband and 57.5% to the wife. The husband and his attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
b. As to the UST, Inc. Pension:
 Effective as of the date of this Memorandum of Decision, that portion of the UST, Inc. Pension Plan ("Plan")of the wife through her employer and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order CT Page 10610 ("QDRO") which shall be prepared by the wife's attorney, 42.5% to the husband and 57.5% to the wife. Unless the parties shall otherwise agree, the wife shall elect a joint and survivor annuity, and in the event that the wife shall predecease the husband prior to drawing her pension, the husband shall be entitled to 100% of that portion of the survivor benefit vested and accrued as of the date of this Memorandum of Decision. Any benefit vesting and accruing thereafter shall belong to the wife. The husband and his attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 c. Any attorney fees and costs incurred in the preparation and filing of the QDRO's shall be borne equally by the parties.
 12. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
 13. The wife shall be entitled to claim the personal exemption for the minor child commencing with the tax year 2001 and thereafter.
 14. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action.
 15. The Court hereby orders an Immediate Wage Withholding Order pursuant to Section 52-362 C.G.S. in order to secure the payment of the child support and arrearage orders.
THE COURT
SHAY, J. CT Page 10611